UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

NATIONAL HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION, et al.,

Plaintiffs,

v.

JERRY BLACK, et al.,

Defendants.

No. 5:21-CV-071-H

**MEMORANDUM OPINION AND ORDER**

Before the Court is the State of Texas and the Texas Racing Commission's Motion to Intervene and Motion to Join Plaintiffs' Partial Motion for Summary Judgment. Dkt. No. 73. Also before the Court is their Proposed Intervenor Complaint.[1] Dkt. No. 83. The defendants responded in opposition to the motion. Dkt. Nos. 80; 81. The plaintiffs responded in support of the motion. Dkt. No. 82. For the reasons stated below, the Court grants the motions (Dkt. No. 73), allowing the State of Texas and the Texas Racing Commission to join the plaintiffs' summary judgment motion and to permissively intervene, subject to the conditions outlined in its prior notice (Dkt. No. 84).

## 1. Background

To reform and nationalize certain elements of thoroughbred horseracing regulation, Congress passed the Horseracing Integrity and Safety Act of 2020 (HISA). *See* Horseracing

[1] The Court notes that the proposed intervenor complaint includes another new party—the Kentucky Horsemen's Benevolent and Protective Association (KHBPA)—that did not move to intervene along with the State of Texas and the Texas Racing Commission. Dkt. No. 83 at 5. KHBPA is not a party to this suit, nor will they become one as a result of the present motion. Only the State of Texas and the Texas Racing Commission have moved to intervene. KHBPA has not.

Integrity and Safety Act of 2020 § 1201, 15 U.S.C. § 3052. Rather than enacting comprehensive laws itself, HISA enlists the help of a nonprofit corporation—the Horseracing Integrity and Safety Authority, Inc. (Authority)—and the Federal Trade Commission to promulgate regulations. §§ 3052–53. Specifically, HISA "recognizes" the Authority "for purposes of developing and implementing a horseracing anti-doping and medication control program and a racetrack safety program." § 3052(a). To carry out such purposes, HISA enables the Authority to propose rules, standards, and procedures that the FTC must approve or disapprove after notice and comment. § 3053(a)–(c). All regulations enacted under HISA, "shall preempt any provision of State law or regulation with respect to matters within the jurisdiction of the Authority." § 3054(b).

The National Horsemen's Benevolent and Protective Association and twelve of its affiliate organizations filed the present suit on March 15, 2021, challenging HISA's constitutionality on several grounds—none of which involved preemption or the Tenth Amendment. Dkt. No. 1. Indeed, unlike states and their agencies, the existing plaintiffs are private organizations without any sovereign interests. On April 30, 2021, the defendants filed separate motions to dismiss, and the plaintiffs filed a motion for partial summary judgment pursuing its Article I private nondelegation and due process claims. *See* Dkt. Nos. 34; 36; 37; 38 at 7. Briefing closed June 18, 2021. *See* Dkt. Nos. 59–61. On January 11, 2022, the Court set the dispositive motions for oral argument on February 16, 2022, which gave the parties approximately five weeks' notice to prepare for the hearing and to make travel arrangements. Dkt. No. 65.

Then on January 27, 2022, the State of Texas and the Texas Racing Commission (TRC) moved to intervene to protect "their sovereign interests in regulating occupations and

professional standards within their borders." Dkt. No. 73 at 3. They allege that HISA violates the Tenth Amendment by commandeering the legislative and executive branches of state government. *Id.* Recognizing that briefing had ended several months prior, the state intervenors clarified that they did "not wish to delay resolution of this case." *Id.* at 9. Therefore, they asked "to join the Motion for Summary Judgment filed by Plaintiffs as if it were its own," rather than file another motion on their overlapping claims. *Id.* The defendants opposed the motion to intervene, primarily arguing that the motion was untimely because it would cause undue delay and prejudice to permit intervention at this point in the case. Dkt. Nos. 80; 81. The existing plaintiffs, on the other hand, filed a response supporting intervention, arguing that they do not adequately represent state interests and that no party would suffer prejudice resulting from intervention. Dkt. No. 82 at 3–7.

Considering, among the other factors in Federal Rule of Civil Procedure 24, the possible greater prejudice and expense the defendants would face if the Court denied the motion—allowing Texas and the TRC to file yet another lawsuit against the defendants—the Court issued a notice to the parties indicating that it was inclined to grant permissive intervention, subject to certain conditions designed to limit potential prejudice. Dkt. No. 84. The Court then gave Texas and the TRC an opportunity to withdraw their motion in case they preferred filing their own suit, rather than be subject to the Court's proposed conditions. *Id.* at 3. Acknowledging these conditions, Texas and the TRC indicated that they wished to persist in their motion to intervene. Dkt. No. 86. Now, having conclusively determined that permissive intervention is appropriate, the Court grants the motion to intervene subject to the conditions outlined in its prior notice to the parties (Dkt. No. 84).

**2. Legal Standards**

**A. Intervention as of Right**

Federal Rule of Civil Procedure 24(a) states that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Thus, an applicant for intervention is entitled to intervention as of right if:

> (1) the application for intervention [is] timely; (2) the applicant [has] an interest relating to the property or transaction which is the subject of the action; (3) the applicant [is] so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and] (4) the applicant's interest [is] inadequately represented by the existing parties to the suit.

*Rotstain v. Mendez*, 986 F.3d 931, 936–37 (5th Cir. 2021) (alteration in original) (quoting *Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978)).

**B. Permissive Intervention**

Alternatively, Federal Rule of Civil Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Permissive intervention is committed to the court's discretion, but the court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Other factors a court may consider include "whether the existing parties adequately represent the proposed intervenor's interests and whether the intervenor's presence is likely to contribute significantly to the development of underlying factual issues." *Sierra Club v. Fed. Emergency*

*Mgmt. Agency*, No. CIV. A. H-07-0608, 2008 WL 2414333, at *4 (S.D. Tex. June 11, 2008) (Rosenthal, C.J.) (citing *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989)).

**C. Conditions**

"[I]t is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right." *Beauregard, Inc. v. Sword Servs., LLC*, 107 F.3d 351, 352–53 (5th Cir. 1997). Specifically, intervention as of right "may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." *Id.* (quoting Fed. R. Civ. P. 24(a) advisory committee's note to 1966 Amendment). And for permissive intervention, courts can impose "almost any condition." *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 940 (N.D. Tex. 2019) (quoting *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 469 (4th Cir. 1992)).

**3. Analysis**

The Court finds that the intervention was timely but that the state intervenors fail to establish a right to intervene under Federal Rule of Civil Procedure 24(a)(2). However, because the state intervenors' claims share a common question of fact or law with the action and the Court's conditions would prevent undue delay or prejudice to the parties, the Court finds that permissive intervention is appropriate.

**A. Intervention as of Right**

**i. Timeliness**

Considering first the timeliness of the state intervenors' motion—a requirement under both mandatory and permissive intervention—the Court finds that the relevant factors indicate the motion was timely filed. *See* Fed. R. Civ. P. 24.

The "threshold consideration of any motion to intervene is timeliness," which rests within the discretion of the district court. *Corley v. Jackson Police Dep't*, 755 F.2d 1207, 1209 (5th Cir. 1985). "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (citing *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)). Determining the timeliness of a motion to intervene entails consideration of four factors: "(1) the length of time during which the intervenor actually knew or reasonably should have known of his interest in the case; (2) the extent of prejudice to the existing parties to the litigation; (3) the extent of prejudice to the would-be intervenor; and (4) unusual circumstances." *Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 865 (5th Cir. 2019) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977)). These factors provide a "framework and 'not a formula for determining timeliness.'" *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) (quoting *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996)).

On balance, the relevant factors weigh in favor of finding that the motion was timely. First, the state intervenors assert that they learned of this lawsuit a "little over a month" prior to filing their motion to intervene and that they then filed their "motion without delay." Dkt. No. 73 at 7. The defendants do not dispute this assertion, and the Court, "[f]or the purposes of deciding the motion to intervene," accepts the state intervenors' "factual allegations as true." *See Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (citing *Mendenhall v. M/V Toyota Maru No. 11*, 551 F.2d 55, 57 (5th Cir. 1977)). This short delay comports with the reasonableness of similar periods of delay under Fifth Circuit law. *See e.g.*, *Espy*, 18 F.3d 1202 (finding a motion timely when made within two months of the

party becoming aware its interest might be affected); *Stallworth*, 558 F.2d at 267 (finding that the intervenors "discharged their duty to act quickly" by filing their motion "less than one month after learning of their interest in [the] case"). Based on the state intervenors' undisputed actual knowledge, the first factor favors timeliness.

Still, the defendants argue that "Texas should have known of its interest" sooner, citing several articles reporting the passage of HISA. Dkt. No. 80 at 3. Indeed, HISA's passage in December 2020 attracted attention in the horseracing industry. *See id.* (citing Bill Finley, Horseracing Integrity and Safety Act Passes in Congress, Thoroughbred Daily News, (Dec. 22, 2020), https://www.thoroughbreddailynews.com/horse-racing-safety-and-integrity-act-passes-in-senate/). In April 2021, three other states challenged HISA in a different district, and six other states filed an amicus brief in the same case in September 2021. *Id.* (citing *Oklahoma, et al., v. United States, et al.*, Case No. 5:21-cv-104, Dkt. Nos. 1; 90 (E.D. Ky. filed Apr. 26, 2021 and Sept. 21, 2021)). Indeed, it seems safe to conclude that the state intervenors reasonably should have known of federal legislation purporting to preempt their regulatory authority sooner than a year after the bill was signed into law. Assuming then that the state intervenors reasonably should have known of their interest in this suit sometime between the April and September 2021—the dates between which other states sought to protect their interests—the first timeliness factor favors them less. They moved to intervene four to nine months after they reasonably should have known of their interest.

Though a longer delay than necessary, the Fifth Circuit has held that similar delays do not defeat timeliness. Parties intervening five months after learning of their interest have been deemed timely. *See, e.g.*, *Ass'n of Pro. Flight Attendants v. Gibbs*, 804 F.2d 318 (5th Cir.

1986). And even a year-long delay has been found timely when the intervenor was part of the government. *See Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir. 1970).

Regardless, had Texas and the TRC intervened sooner the defendants would likely suffer no more prejudice than they do now. Thus, the second factor—the extent of the prejudice to the existing parties—favors finding timeliness.

The prejudice factor "is concerned only with the prejudice caused by the applicants' delay, not that prejudice which may result if intervention is allowed." *Edwards*, 78 F.3d at 1002 (citing *Stallworth*, 558 F.2d at 265). Thus, the Court assesses the prejudice to existing parties caused by "the applicant's failure to seek intervention as soon as possible after learning of their interest in the case." *Id.* Here, the state intervenors delayed just over a month from the time they actually learned of the suit. Dkt. No. 73 at 7. During that time the parties were preparing for the hearing on the dispositive motions. Aware of the upcoming hearing, the state intervenors asked to join the existing plaintiffs' motion for summary judgment—rather than file their own—to avoid relitigating any issues raised in the dispositive motions. *Id.* at 9. Thus, measuring prejudice from the state intervenors' actual knowledge of the lawsuit, the Court finds no prejudice to the defendants. *See generally Edwards*, 78 F.3d at 1002 (finding "no prejudice" when the parties "did nothing except anticipate and prepare" for a hearing from the time the intervenors learned of their interest to when they moved to intervene).

Measuring prejudice starting from the time of the state intervenors' constructive knowledge of their interest, the defendants' still face little prejudice. As mentioned, because the state intervenors do not attempt to litigate any issues the parties previously briefed, allowing intervention will not result in the "revisiting of issues previously addressed at

length by the parties." *See Lucas v. McKeithen*, 102 F.3d 171, 173 (5th Cir. 1996) (finding that intervention was untimely in part due to the prejudice caused by resurrecting old issues). Here, the state intervenors seek to protect sovereign interests and assert arguments not already presented in the suit. They assert only one unique claim: Four of the five claims in their proposed intervenor complaint largely mirror the claims raised by the initial plaintiffs. *Compare* Dkt. No. 23 *with* Dkt. No. 83. And by joining the plaintiffs' summary-judgment motion, the state intervenors do not seek to relitigate any of those issues. *See Wal–Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (finding that intervention was timely because the intervenor "sought intervention before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded").

Had the state intervenors introduced their Tenth Amendment claim earlier, the defendants would have expended similar time and expense researching and briefing as they will have to now—just at a different stage in the litigation. Either way, the parties would brief the issue, the Court would take it under consideration, and eventually issue a ruling. When the parties raise only legal issues and forgo discovery, as they have done here (*see* Dkt. No. 16 at 2), adding another legal claim at nearly any point during the litigation would cause roughly equivalent delays. And the defendants' primary concern—delaying final entry of judgment—relates to the "prejudice which may result if intervention is allowed" more than "the prejudice caused by the applicants' delay." *Edwards*, 78 F.3d at 1002 (citing *Stallworth*, 558 F.2d at 265). In this context, the prejudice factor "is concerned only with" the latter. *Id.* "Any potential prejudice caused by the intervention itself is irrelevant, because it would have occurred regardless of whether the intervention was timely." *In re*

*Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009) (citing *Stallworth*, 558 F.2d at 265).[2]

On the other side, the existing plaintiffs do not allege that they will suffer any prejudice from intervention. Rather, they filed a response in support of the state intervenors' motion to intervene, arguing that no party will suffer prejudice. Dkt. No. 82. Moreover, that the state intervenors filed their motion prior to the resolution of any substantive issues, let alone "entry of judgment," strongly "favors timeliness." *Edwards*, 78 F.3d at 1001.

Third, considering the prejudice to the would-be intervenors, allowing intervention "in the existing federal lawsuit is the most efficient . . . way for Texas to pursue its claim." *In re Lease Oil Antitrust Litig.*, 570 F.3d at 249–50. The state intervenors—and the defendants—would have to re-brief all claims if forced to bring their own suit. By joining the plaintiffs' existing motion for summary judgment and consolidating the issues in one proceeding conserves all parties' resources. Nevertheless, because Texas could file its own suit instead of intervening, the prejudice it faces is insubstantial. Thus, the third timeliness factor only slightly favors allowing intervention.

Finally, Texas does not argue that the fourth timeliness factor—unusual circumstances—further tips the scales, and the defendants agree that such circumstances are not present. *See* Dkt. Nos. 73 at 7–8; 80 at 4. Thus, the fourth factor is neutral.

Balancing the factors and resolving doubts "in favor of the proposed intervenor[s]" in accordance with precedent, the Court finds that intervention was timely. *See In re Lease Oil*

---

[2] To be sure, intervening at the beginning of the suit would have allowed the Court to consolidate all the issues into one hearing. At this point, however, it is unknown whether the parties will request to be heard on the Tenth Amendment claim, which likely requires no presentation of evidence.

*Antitrust Litig.*, 570 F.3d at 248 (quoting 6 James W. Moore et al., Moore's Federal Practice § 24.03[1][a], at 24–22 (3d ed. 2008)). Timeliness, however, does not establish that the state intervenors may intervene as of right.

**ii. Interest of the Intervenors**

Beyond timeliness, Rule 24(a)(2) requires that intervenors "claim[] an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). When the "property or transaction" of an action is a federal statute, "the legal question is whether the [intervenors] have an 'interest' relating to" the statute. *Texas*, 805 F.3d at 657 (quoting Fed. R. Civ. P. 24(a)(2)). The intervenors' interest, however, must establish that they have "a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Id.* at 658.

The state intervenors satisfy this test. They assert interests "in rulemaking authority and regulating racing participants and pari-mutuel wagering within its borders," which HISA purports to curtail through preemption. Dkt. No. 73 at 4. In their view, HISA also requires the state intervenors "to spend time and resources to help the Authority carry out a federal regulatory program." *Id.* at 5. Thus, the interest is not merely "ideological." *Texas*, 805 F.3d at 658. Rather, the state intervenors have a "direct, substantial, legally protectable interest" in the vitality of the horseracing-regulatory programs they have developed and implemented for so long. *In re Lease Oil Antitrust Litig.*, 570 F.3d at 250 (quoting *Cajun Elect. Power Coop. v. Gulf States Utils., Inc.*, 940 F.2d 117, 119 (5th Cir. 1991)).

**iii. Practical Impairment of Ability to Protect Interest**

Though the state intervenors possess an interest related to the action, they fail to establish that "disposing of the action may as a practical matter impair or impede" their

ability to protect their interests. Fed. R. Civ. P. 24(a)(2). The state intervenors' lone argument in this regard is that their interest will "be impaired or impeded if [they are] not permitted to intervene because the current plaintiffs do not adequately represent" their interests. Dkt. No. 81 at 6. As mentioned, however, the state intervenors could pursue their unique Tenth Amendment claim in separate litigation. And for purposes of intervention by right, the "mere inconvenience caused by requiring would-be intervenor to litigate separately is not the sort of adverse practical effect contemplated by Rule 24(a)(2))." *See Gilyard v. Tex. Laurel Ridge Hosp. LP*, No. SA-07-CA-650-OG, 2009 WL 10670038, at *3 (W.D. Tex. Feb. 18, 2009) (citing *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977)). Intervention as of right is "generally is not appropriate where the applicant can protect its interests and/or recover on its claim through some other means." *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 526 (5th Cir. 1994) (citing *Diaz*, 427 F.2d 1118 (discussing intervention as of right)); *see Gilyard*, 2009 WL 10670038, at *3.

**iv. Adequacy of Representation**

Moreover, the state intervenors cannot show that their interests are inadequately represented despite bringing a new claim to the action. Even "legitimate additional" arguments—standing alone—do not show inadequacy of representation. *Cf. Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014) (holding that an intervenor's additional arguments *combined* with a "lack of unity in all objectives" may suffice to show inadequacy of representation). Rather, a "presumption of adequate representation arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Edwards*, 78 F.3d at 1005. Though the plaintiffs attempt to argue that "they do not adequately represent the interest of the State Intervenors," they all share the same goal: a declaration that HISA is

facially unconstitutional. Dkt. No. 82 at 4–5; *see Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *3 (5th Cir. Mar. 22, 2022) (finding that an agency and a private intervenor share the same objective because they both sought to uphold the constitutionality of a statute).

To overcome the presumption of adequate representation, the state intervenors "must show adversity of interest, collusion, or nonfeasance on the part of the existing" plaintiffs, which they cannot. *Edwards*, 78 F.3d at 1005. The proposed collaboration of the state intervenors and the existing plaintiffs shows alignment—not "adversity"—of interest. *Id.* Nor is there evidence of "collusion" between the existing parties or "nonfeasance" on the part of the existing plaintiffs. *Id.* And though the plaintiffs pursued only two of their four claims on summary judgment, their decision shows discernment of the pertinent legal issues present in the case, not nonfeasance. Even if it did, the state intervenors willfully seek to join the plaintiffs' summary judgment motion, indicating their consent to the plaintiffs' litigation strategy. Therefore, the state intervenors cannot show that their "interests diverge from the [plaintiffs'] 'in a manner germane to the case,'" and they may not intervene as of right. *Miller*, 2022 WL 851782, at *3 (quoting *Texas*, 805 F.3d at 662).

**B. Permissive Intervention**

Even though the state intervenors cannot establish a right to intervene, the Court finds that permissive intervention is appropriate. "Permissive intervention is appropriate when: '(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.'" *Sierra Club*, 2008 WL 2414333, at *4 (quoting *Clements*, 884 F.2d at 189 n.2).

First, as explained above, the state intervenors' motion is timely. Second, the state intervenors' claims "share a common question of law or fact" with the pending suit. Fed. R. Civ. P. 24(b)(1)(B). Neither defendant disputes this. *See* Dkt. Nos. 80; 81. The state intervenors—like the plaintiffs—challenge the constitutionality of HISA's regulatory regime, which involves a federal public-private partnership that preempts state rulemaking authority. This is not a case where a state attempts to intervene but "asserts no actual, present interest that would permit it to sue or be sued by the parties or anyone else." *DeOtte v. Azar*, 332 F.R.D. 173, 186 (N.D. Tex. 2019) (denying permissive intervention because the proposed state intervenor "simply ha[d] no claim or defense" against the existing parties).

Third, the Court finds that permissive intervention will not cause undue delay or prejudice. Though delay cannot be fully neutralized—such is the nature of nearly any intervention—prejudice is largely mitigated by adding appropriate conditions. As discussed above, the state intervenors could bring their own suit against the defendants, challenging HISA on Tenth Amendment grounds. Had they done so, the time and expense of separate litigation would almost invariably cause the defendants greater prejudice, expense, and delay. They would have to defend against all of Texas's claims, largely duplicating their efforts spent in the present lawsuit. Moreover, granting permissive intervention would "foster economy of judicial administration." *Stallworth*, 558 F.2d at 265.

To limit prejudice and avoid any disturbance of the parties' preparation for the hearing on the existing motions, the Court notified the state intervenors that they would not be allowed to participate in the hearing should the Court grant their motion. *See* Dkt. No. 84 at 3. In designing further conditions, the Court notes that "the efficient administration of justice is always an important consideration, [but] fundamental fairness to every litigant is

an even greater concern." *Columbus-Am.*, 974 F.2d at 470. Here, both considerations favor preventing the state intervenors from relitigating issues the existing parties' briefed, which will limit possible prejudice to the defendants while still allowing the state intervenors to pursue their Tenth Amendment claim to "protect . . . their sovereign interests." Dkt. No. 73 at 3; *cf. In re Lease Oil Antitrust Litig.*, 570 F.3d at 249 (finding that the "actions of the district court prevented prejudice to one party that might otherwise have been disadvantaged by a late intervention").

The state intervenors have already complied with the proposed condition limiting their participation in the hearing on February 16, 2022. *See* Dkt. Nos. 84; 85. Accordingly, the Court imposes the following conditions to which the state intervenors consented (Dkt. No. 86): they (1) may join the plaintiffs' existing partial motion for summary judgment as requested; (2) may not pursue their anti-commandeering claim, which has not previously been raised in this litigation, nor conduct discovery until the parties' outstanding motions have been resolved; and (3) may not relitigate any issues already decided. These conditions will preserve fairness to the parties, conserve judicial and litigant resources, and allow the state intervenors to efficiently seek to protect their sovereign interests. Accordingly, the Court grants Texas and the TRC's motion to intervene (Dkt. No. 73).

So ordered on March 31, 2022.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE