UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| NATIONAL HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION, et al., <br><br> Plaintiffs, <br><br> THE STATE OF TEXAS and THE TEXAS RACING COMMISSION, <br><br> Intervenor-Plaintiffs, <br><br> v. <br><br> JERRY BLACK, et al., <br><br> Defendants. | No. 5:21-CV-071-H |

## MEMORANDUM OPINION AND ORDER

For several years, high-stakes litigation has occurred throughout the nation over the fate of the federal regulatory body designed to govern horseracing. Injunctions have issued, regulatory regimes have been declared unconstitutional, and Congress has amended the statute as a result. When Congress changes a statute in response to a court's opinion, the result is usually a second wave of litigation: Was the attempted remedy sufficient? What new arguments arise? But those larger questions are not yet before the Court. Currently, the plaintiffs make a narrow procedural claim that a new anti-doping rule violates the Administrative Procedure Act because not enough time passed between when the rule was published as final and when the rule took effect. When an agency issues a substantive rule—the type of rule that controls our behavior—it must ordinarily wait 30 days between when the final rule is issued and when it takes effect. This ensures that regulated parties have the time to challenge the rule's validity or bring themselves into compliance. But the anti-doping rule took effect the same day that it was published as final. As a result, the rule

issued in violation of the APA, so the plaintiffs—and everyone else—will get their 30 days. The Court enjoins implementation or enforcement of the anti-doping rule until May 1, 2023.

The Court notes at the outset the limited scope of this Order. In their Motion for an Emergency Preliminary Injunction Against the Medication Rule (Dkt. No. 124), the plaintiffs indicate that they seek relief on the anti-doping rule because "the rule's approval was announced *on its effective date*." *Id.* at 4 (emphasis in original). And the plaintiffs recognize that they have a separate motion for preliminary injunction already pending, which attacks the facial constitutionality of the FTC–Authority framework. Yet the plaintiff's brief in support of its recent, more limited motion (Dkt. No. 125) rehashes the arguments made in the prior motion, primarily that the FTC–Authority framework remains unconstitutional, notwithstanding the congressional amendment. *See* Dkt. No. 125 at 11 ("[T]he statute is unconstitutional on its face because as written, it allows a private corporation to make public law."). Plaintiffs' only new argument is that section 553(d), absent good cause, requires an agency rule to take effect 30 days after the final rule is published. In the interest of judicial economy—and because the plaintiffs only seek emergency relief as to the anti-doping rule—the Court will limit its analysis to the sole issue at hand: whether the FTC failed to comply with section 553's required 30-day waiting period and, if so, whether the plaintiffs are entitled to equitable relief.

1.  **Background**

    A.  **The ADMC Rule**

    On January 26, 2023, the Horseracing Integrity and Safety Authority (the Authority) published its proposed Anti-Doping and Medication Control Rule (the ADMC rule) in the

Federal Register for consideration by the Federal Trade Commission. 88 Fed. Reg. 5070 (Jan. 26, 2023). The ADMC rule allowed members of the public to submit comments until February 9. *Id.* at 5084. The Commission was to approve or disapprove the ADMC rule by March 27. *Id.* If approved, it would take immediate effect. *Id.*

And on March 27, the Commission did approve the ADMC rule, issuing its Order Approving the Anti-Doping and Medication Control Rule Proposed by the Horseracing Integrity and Safety Authority. Dkt. No. 126-1 at 34. The order discusses the public comments and notes the Commission's finding that the ADMC rule is consistent with the Authority's implementing statute. *Id.* at 35. The Commission chose to make the rule effective immediately. *Id.*

To establish "uniform standards for racetrack safety and medication control," the ADMC rule bans certain substances and methods, sets forth a framework for testing covered horses, and specifies investigatory, compliance, and disciplinary procedures in the event of a violation. 88 Fed. Reg. 5070. The ADMC rule in particular bans certain anabolic agents, peptide hormones, growth factors, beta-2 antagonists, hormone and metabolic modulators, diuretics, masking agents, and other substances lacking regulatory health approval or recognition as having a valid veterinary use. *Id.* at 5122. It also prohibits blood manipulation, chemical castration, and gene and cell doping. *Id.* at 5123. A violation could result in, among other sanctions, ineligibility to race or disqualification of prior results. *Id.* at 5100–02, 5114–15. If a covered horse's results are disqualified, all compensation and prizes associated with the horse must be forfeited and redistributed. *Id.* at 5101.

B.     **Procedural History**

In March 2021, National Horsemen's and its affiliates filed suit against the FTC, its commissioners, the Authority, and its Nominating Committee members, lodging a challenge that the Horseracing Integrity and Safety Act (HISA) is facially unconstitutional. Dkt. No. 1.  The plaintiffs' filed their First Amended Complaint, adding claims under the private-nondelegation doctrine, public-nondelegation doctrine, Appointments Clause, and the Due Process Clause.  Dkt. No. 23 at 27–29.  The plaintiffs requested declaratory and injunctive relief, as well as compensatory and nominal damages.  *Id.*

Dispositive motions and an evidentiary hearing followed.  Motions to dismiss (Dkt. Nos. 34, 36), a motion for partial summary judgment (Dkt. No. 37), outside attention in the form of amicus curiae briefing by industry participants (Dkt. Nos. 49, 51) and United States Congressmen (Dkt. No. 53), as well as requests to participate in oral argument (Dkt. Nos. 67, 72) and to intervene in the action (Dkt. No. 73) were all filed within a few short months. In a lengthy order, the Court expressed concern about HISA's constitutionality, but relying on its reading of binding precedent, concluded that the FTC–Authority framework was constitutional.  Dkt. No. 92.

On appeal, the Fifth Circuit reversed, holding that the FTC–Authority regulatory scheme was unconstitutional because it gave the FTC too little control over a private entity with regulatory authority.  *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F. 4th 869, 872 (5th Cir. 2022).  Demonstrating its commitment to the new law, Congress reacted within months to the Fifth Circuit's opinion, amending the Act to expressly "give the Federal Trade Commission discretion to 'abrogate, add to, and modify' any rules that bind the industry."  *Oklahoma v. United States*, 62 F. 4th 221, 225 (6th Cir. 2023) (quoting

Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, 136 Stat. 4459 (2022)). In the words of the Sixth Circuit, "[s]ometimes government works." *Oklahoma*, 62 F. 4th at 225. The defendants sought rehearing in the Fifth Circuit in light of the amendment, but the panel remanded the case to this Court. *Nat'l Horsemen's Benevolent v. Black*, No. 22-10387, Dkt. Nos. 223–24 (5th Cir. Jan. 31, 2023) (denying rehearing and issuing mandate).

Undeterred by the amendment, the plaintiffs filed a motion for a preliminary injunction (Dkt. No. 116), asking the Court to enjoin the Authority from implementing and enforcing HISA while the parties dispute whether Congress's recent modification to HISA makes the statute constitutional. *Id.* at 6. The plaintiffs proposed that the Court order an expedited briefing schedule on the motion so the Court could issue its order by March 27, 2023—the date the ADMC rule could have gone (and eventually did go) into effect. Dkt. No. 117. After considering the parties' respective positions, the Court declined to order expedited briefing and instead set a regular briefing schedule. Dkt. No. 121.

On March 27, 2023—the very day that the ADMC rule was approved and went into effect—the plaintiffs filed their Motion for an Emergency Preliminary Injunction Against the Medication Rule. Dkt. No. 124. The emergency motion focuses specifically on the ADMC rule, alleging that it violates the APA. *Id.* The Court ordered expedited briefing for this emergency motion only (Dkt. No. 127) and has since received the defendants' responses (Dkt. Nos. 128-1; 129) and the plaintiffs' reply (Dkt. No. 130). The briefing for this emergency motion primarily emphasizes the broader claims that the plaintiffs raised in their prior motion for a preliminary injunction. *Compare* Dkt. No. 116, *with* Dkt. Nos. 128-1; 129; 130. Today, however, the Court addresses only the unique component of the plaintiffs' emergency motion—the ADMC rule's alleged violation of the APA. *See* Dkt. No. 124. The

plaintiffs' emergency preliminary-injunction motion is ripe and ready for review. *See* Dkt. Nos. 128-1; 129; 130.

2. **Legal Standards**

   A. **The Preliminary Injunction Standard**

Federal Rule of Civil Procedure 65(a) authorizes federal courts to issue preliminary injunctions. "A preliminary injunction is an extraordinary remedy," requiring a "clear showing" that plaintiffs are entitled to such relief. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008). The purpose of a preliminary injunction is to preserve the status quo and prevent irreparable injury until the court renders a decision on the merits. *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). "In order to obtain a preliminary injunction, a movant must demonstrate (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) that the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction is in the public interest." *Moore v. Brown*, 868 F.3d 398, 402–03 (5th Cir. 2017) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)). The Court takes each question in turn, but in the final analysis, "[l]ikelihood of success and irreparable injury to the movant are the most significant factors." *Louisiana v. Becerra*, 20 F.4th 260, 262 (5th Cir. 2021) (citing *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014)).

   B. **Section 553(d)'s 30-day waiting period**

Section 553(d) of the Administrative Procedure Act provides that "[t]he required publication or service of a substantive rule shall be made not less than 30 days before its effective date," unless the rule is a policy statement or grants an exemption or the agency shows good cause. 5 U.S.C. § 553(d). As a result, the APA "requires public notice and

comment and a thirty-day grace period before a proposed rule takes effect." *E. Bay Sanctuary Covenant v. Biden*, 993 F. 3d 640, 675 (9th Cir. 2021). The "thirty-day waiting period is 'intended to give affected parties time to adjust their behavior before the final rule takes effect.'" *Id.* at 675 n.15 (quoting *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1485 (9th Cir. 1992)). The 30-day period also provides litigants and courts sufficient time to handle challenges to the final rule. The rule is not absolute, and agencies who find good cause, for example, are not subject to the 30-day waiting period.

3. Analysis

   A. The plaintiffs are likely to succeed on the merits of their section 553(d) argument.

Section 553(d)'s waiting period applies to the FTC's order approving the ADMC rule. That section provides: "The required publication or service of a substantive rule shall be made not less than 30 days before its effective date," unless one of three exceptions applies. The "required publication" contemplated under the rule is a final rule, rather than a proposed rule. *See, e.g.*, *Ctr. for Marine Conservation v. Brown*, 917 F. Supp. 1128, 1153 (S.D. Tex. 1996) (stating that section 553(d) applies to "rules actually adopted by an agency"); *Ngou v. Schweiker*, 535 F. Supp. 1214, 1216 (D.D.C. 1982) ("The weight of authority . . . reads section 553(d) as requiring a 30-day delay between publication of the *final rule* and its effective date.") (emphasis added); *Rowell v. Andrus*, 631 F.2d 699, 702 (10th Cir. 1980) ("We are convinced that the 'required publication' under § 553(d) . . . [refers to] substantive rules as actually adopted by an agency.").

The ADMC rule, after being published in the Federal Register but before being approved by the FTC, was a proposed rule. For one thing, the Authority itself recognized

that its submission was a proposed rule until approved by the FTC. HISA Anti-Doping and Medication Control Rule, 88 Fed. Reg. 5070–71 (Jan. 26, 2023) (stating that the Authority "is charged with developing proposed rules on a variety of subjects"); *id.* at 5073 ("The Protocol will go into effect if and when the Commission approves the proposed rule."). That the ADMC rule, when first published in the Federal Register, was a proposed rule is also made clear by the Authority's enabling statute. 15 U.S.C. § 3053(a) provides that the Authority shall submit to the Commission "any proposed rule . . . relating to . . . anti-doping and medication control." And subsection (b) requires the FTC to publish in the Federal Register each "proposed rule submitted under subsection (a)."

Given this law and the undisputed facts before the Court, the defendants have not complied with section 553(d)'s 30-day waiting period. The proposed rule noted that the FTC "has 60 days from the date of publication to approve or disapprove the proposed rule or rule modification." HISA Anti-Doping and Medication Control Rule, 88 Fed. Reg. 5070 (Jan. 26, 2023). How long did it take for the FTC to approve the proposed rule? Exactly 60 days. *Id.* at 5083 ("This rule would take effect upon approval by the Commission, and the Commission must approve or disapprove the rule by March 27, 2023."). This would have been permissible—had the effective date of the rule been at least 30 days after the rule had been approved—but because the ADMC rule took effect on the same day it was approved by the FTC, a section 553(d) violation occurred.

And no exception to the 30-day waiting period applies here. The 30-day waiting period does not apply (1) when the rule "grants or recognizes an exemption or relieves a restriction"; (2) where the putative rule is an "interpretive rule[ or] statement[] of policy"; or (3) or where "good cause [is] found and published with the rule." 5 U.S.C. § 553(d)(1)–(3).

– 8 –

Here, the defendants do not assert that the ADMC is a rule that recognizes an exemption or relieves a restriction, and it is not. Nor do they assert that the Rule is an interpretive rule or a statement of policy. "Legislative or substantive rules are those which 'affect individual rights and obligations.'" *Shell Offshore, Inc. v. Babbitt*, 238 F.3d 622, 628 (5th Cir. 2001) (citing *Chrysler Corp v. Brown*, 441 U.S. 281, 302 (1979)). The ADMC rule plainly affects individual rights and obligations because it, among other things, requires covered persons to submit to surprise inspection of eligible facilities and to ensure that no prohibited substances are present in a covered horse, as well as prescribing punishments with significant financial implications.

Nor have the defendants attempted to show—let alone established—good cause. "The burden of establishing good cause is on the agency, and the exception is applicable in 'emergency situations, or where delay could result in serious harm.'" *Coalition for Workforce Innovation v. Walsh*, No. 1:21-CV-130, 2022 WL 1073346, at *5 (E.D. Tex. March 14, 2022) (quoting *United States v. Dean*, No. 08-CR-67(LAP), 2020 WL 3073340, at *2 (S.D.N.Y. June 9, 2020)). "To determine whether good cause exists, the court must 'rely only on the basis articulated by the agency itself at the time of the rulemaking.'" *Id.* (quoting *Texas v. Becerra*, No. 5:21-CV-300-H, 2021 WL 6198109, at *13 (N.D. Tex. Dec. 31, 2021)). Because neither the Authority nor the FTC provided any explanation for good cause during the administrative process (or even in response to the emergency motion), the good-cause exception is inapplicable.

Thus, no exception applies, and the decision to have the ADMC rule take effect the same day that it was approved violated section 553(d)'s 30-day waiting period. And tellingly, the defendants do not argue otherwise. In their combined 60 pages of briefing

– 9 –

submitted in the past few days, neither the FTC defendants nor the Authority defendants meaningfully address the plaintiff's section 553(d) argument. *See* Dkt. Nos. 128-1, 129. Instead, the Authority defendants claim that the argument was not adequately pled (Dkt. No. 128-1 at 29), and the FTC defendants fail to even mention section 553(d).

Instead of addressing the merits, the defendants claim that the instant motion is outside the scope of the plaintiffs' complaint. Dkt. No. 128-1 at 29. They argue that the "Plaintiffs' amended complaint raises a facial constitutional challenge to HISA itself, not any as-applied administrative challenge to the rules." *Id.* But the defendants read too narrowly the plaintiff's request for relief. While, yes, the plaintiffs request that the Court, for instance, "[d]eclare that HISA violates the Due Process Clause," they also request that the Court "[e]njoin defendants, preliminarily and permanently, from taking any action to implement" HISA. Dkt. No. 23 at 28. The Court finds, unsurprisingly, that the Authority's attempt to issue a rule consistent with its congressional mandate constitutes "taking an[] action to implement" HISA. *See* 15 U.S.C. § 3054(a)(1) ("[T]he Authority . . . shall . . . implement and enforce the horseracing anti-doping and medication control program . . . ."). The Amended Complaint also seeks "any further relief to which Plaintiffs may be entitled." Dkt. No. 23 at 29. And regardless of whether this particular regulation was pled, "a challenge to the constitutionality of a statute necessarily encompasses a challenge to every agency action taken to implement [or enforce] the unconstitutional command." *Braidwood*

*Mgmt. Inc v. Becerra*, No. 4:20-CV-283-0, 2023 WL 2703229, at *11 (N.D. Tex. March 30, 2023).[1]

Finally, the defendants accuse the plaintiffs of crying wolf. *See* Dkt. No. 128-1 at 29 ("Plaintiff's attempt to create a late-breaking 'emergency' . . . hardly provides an excuse); *id.* at 28–29 ("The FTC published the proposed ADMC rules over two months ago, specifying that the rules 'would take effect immediately' on March 27 if approved."). But the defendants fail to realize the difference between a proposed rule and a final rule. Before the FTC approved the rule, the defendants were in a state of limbo—uncertain if they should begin preparing for compliance with the rule as proposed or whether the FTC would disapprove or modify the proposed ADMC rule. "[T]he time lag required by § 553(d) after publication of the regulation as finally issued is [designed] to afford persons affected a reasonable time to prepare for the effective date of a rule or rules or to take any other action which the issuance of the rules may prompt." *Rowell*, 631 F.2d at 703 (internal citation omitted). The plaintiffs have been denied this opportunity. "Focusing solely on the issue of whether defendant has violated the requirements of section 533(d), the Court finds that plaintiffs have demonstrated a substantial likelihood of success on the merits." *Ngou*, 535 F. Supp. at 1217.

---

[1] The Court also notes that it would have been impossible for the plaintiffs to plead this issue with specificity because the rule was not approved until March 27, 2023—the same day the motion was filed. Just as the defendants fairly point out that the ADMC rule came as a surprise to no one, the plaintiffs fairly point out that there can be no procedural violation (and therefore no motion to enjoin) where there is no final rule. *See Bristol-Myers Co. v. FTC*, 424 F.2d 935, 940 (D.C. Cir. 1970) ("[T]he claim for permanent injunctive relief is not yet ripe for adjudication. The Commission has merely proposed a rule, which may never be adopted or enforced.").

### B. The plaintiffs have adequately shown a threat of irreparable injury.

Next, the Court must determine whether the plaintiffs have shown a substantial threat that they will suffer irreparable harm absent a preliminary injunction. They have. "To show irreparable injury if threatened action is not enjoined, it is not necessary to demonstrate that harm is inevitable and irreparable." *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986). A plaintiff need only show that he is "likely to suffer irreparable harm in the absence of preliminary relief." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018). "In general, harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). Nonetheless, "there must be more than an unfounded fear" or "speculative injury." *Daniels Health Servs., L.L.C. v. Vascular Health Servs., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). Thus, a court will not grant a preliminary injunction "simply to prevent the possibility of some remote future injury." *Morrell v. City of Shreveport*, 536 F. App'x 433, 435 (5th Cir. 2013). Instead, the plaintiffs must point to "a likelihood that irreparable harm will occur." *Id*.

The Court agrees that the ADMC rule violates section 553(d) because the Authority did not wait 30 days between the date that the final rule was published and when it went into effect. *See supra* Part 3.A; Dkt. No. 125 at 26. Thus, the ADMC's last-minute approval and immediate effect deprived the plaintiffs of the "time to adjust their behavior before the final rule t[ook] effect," which the APA requires. *E. Bay Sanctuary Covenant*, 993 F.3d at 675 n.15. In the absence of a preliminary injunction at this time, the plaintiffs will not receive this mandatory 30-day period between when the final rule was published and when it goes into effect to adjust their practices and behavior in accordance with the ADMC rule. This

type of procedural injury constitutes irreparable harm. *See Texas v. Becerra*, No. 5:22-CV-185, 2022 WL 3639525, at *29 (N.D. Tex. Aug. 23, 2022) ("A procedural injury, by definition, is irreparable injury . . . ."); *Fund for Animals v. Clark*, 27 F. Supp. 2d 8, 14 (D.D.C. 1998) (stating that the plaintiff's procedural injury, in conjunction with "other, concrete injuries" satisfies the irreparable-harm standard).

Irreparable harm also results from the likelihood of tainted horseraces under the ADMC rule. Dkt. No. 125 at 25–26. Other courts have concluded that plaintiffs can "make a sufficient showing of irreparable harm" by demonstrating that they "remain restricted under an illegal system" or rule in a sporting event that would lead to disqualification. *See Jackson v. Nat'l Football League*, 802 F. Supp. 226, 230–31 (D. Minn. 1992); *see also Powell v. Nat'l Football League*, 690 F. Supp. 812 (D. Minn. 1988); *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 423 (9th Cir. 1991); *Linseman v. World Hockey Ass'n*, 439 F. Supp. 1315, 1319–20 (D. Conn. 1977). As the plaintiffs explain, "horsemen are particularly concerned about race disqualifications based on trace amounts of banned substances that were licit when administered only days before the ADMC rule was published. Dkt. No. 125 at 26. And some of these substances may remain in a horse's system for days, weeks, or even longer. *Id.*; Dkt. No. 126 at 8–9. Thus, the plaintiffs show a substantial threat of irreparable harm by demonstrating that under the ADMC rule, which did not comply with the APA's 30-day requirement, the plaintiffs' horses face immediate disqualification. The defendants argue in response that "few substances that were broadly legal" are now prohibited under the ADMC rule and that any inconvenience is offset by the benefits of "streamlining regulation," but that does not remove the threat of disqualification that the plaintiffs face without being offered the opportunity to adjust their behavior.

In addition, the plaintiffs face nonrecoverable compliance costs. Dkt. No. 125 at 26. Generally, where monetary damages would adequately remedy the plaintiffs' injuries, the plaintiffs' harms are not irreparable. *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 651 (N.D. Tex. 2021) (quoting *Janvey*, 647 F.3d at 600). But that is not always the case. "A regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016). This is "because federal agencies generally enjoy sovereign immunity for any monetary damages." *Wages v. White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021). Thus, injunctive relief is justified where a regulated entity can never recover its compliance costs. *See LabMD, Inc. v. FTC*, 678 F. App'x 816, 821 (11th Cir. 2016) (finding irreparable harm by irrecoverable compliance costs pending appeal). Here, "[h]orsemen will have to pay for additional veterinarian visits, additional pre-lab race lab testing, and other expenses to ensure their horses are clean" and comply with the ADMC rule. Dkt. No. 125 at 26. Therefore, the plaintiffs face a substantial threat of irreparable harm through nonrecoverable compliance costs.

The defendants argue, however, that the plaintiffs delayed in seeking injunctive relief, which cuts against their irreparable-harm arguments. Dkt. No. 128-1 at 28. This Court has previously recognized that "delay in seeking relief is a consideration when analyzing the threat of imminent and irreparable harm." *Anyadike v. Vernon Coll.*, No. 7:15-CV-157, 2015 WL 12964684, at *3 (N.D. Tex. Nov. 20, 2015). Nevertheless, a "good explanation" for any alleged delay mitigates that effect. *VanDerStok v. Garland*, No. 4:22-CV-691-O, 2022 WL 4009048, at *9 (N.D. Tex. Sept. 2, 2022). Focusing specifically on the APA-violation claim before the Court today, the Court finds that the plaintiffs did not delay

or, at the very least, have a good explanation.  The ADMC rule was not approved until March 27, 2023, and it went into effect immediately.  Dkt. No. 126-1 at 34–35.  The plaintiffs sought relief for the APA violation by filing a motion for an emergency preliminary injunction that same day.  *See* Dkt. No. 124.  The plaintiffs could not have filed such a claim until it was certain that the FTC would adopt the rule and would not provide the 30-day window between the date the final rule was published and the date it went into effect.  Therefore, the Court is not persuaded by the defendants' argument.

      **C.**    **The balance of interests militates in favor of granting limited relief.**

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will serve the public interest— "merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Therefore, the Court considers them together.  The Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Winter*, 555 U.S. at 24 (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)).

Here, the balance of interests suggests that the limited remedy of a 30-day injunction is appropriate.  The plaintiffs have shown a serious risk of harm—potential physical injury to racehorses, potential disqualification from Triple Crown prep races, and the burden of coming into compliance with a new anti-doping regulatory scheme without the legally required delayed effective date.  Dkt. No. 124 at 2–3; Dkt. No. 125 at 23–25.  This harm— when balanced against the limited harm that could result from a 30-day hold on a new rule (and, in essence, a return to the long-time status quo up until a few days ago)—is sufficient to justify the limited relief this order provides.

### D. The appropriate remedy is to stay the effective date of the ADMC rule for 30 days.

"The final question to be resolved is the nature of the injunctive relief to be granted." *Ngou*, 535 F. Supp. at 1217. "Some courts have held that regulations issued in violation of section 553(d) are merely ineffective until passage of the 30-day period." *Id.* (citing *Rowell*, 631 F.2d at 704). On the other hand, some courts suggest "that this approach should be questioned since it invites violations of section 553(d)." *Id.* And the D.C. Circuit recognized that "[w]hile failure to comply with the notice and comment requirements of § 553(d)'s 30-day requirements calls for a different solution[, w]e agree with the Tenth Circuit that '§ 553(d) is susceptible of a reasonable construction that the regulation may be saved and held valid after passage of the 30-day notice period." *Prows v. Dep't of Justice*, 938 F.2d 274, 276 (D.C. Cir. 1991) (citing *Rowell*, 631 F.2d at 704). The D.C. Circuit went on to explain that section 533(d) "protects those who are affected by agency action taken during the 30-day waiting period without disturbing later action that is not the product of the violation." *Id.*

Here, neither vacatur nor a long-term injunction is appropriate. Instead, given "the special circumstances of this case" and the limited issue currently before the Court, the appropriate remedy is to declare the ADMC rule invalid for a 30-day notice period and valid thereafter absent further order of the Court. *Ngou*, 535 F. Supp. at 1217. This rule protects the parties affected by FTC action taken during the 30-day waiting period without disturbing later action that is not the product of the violation. *See Prows*, 938 F.2d at 276. Thus, the Court enjoins implementation or enforcement of the ADMC rule until May 1, 2023.

4. **Conclusion**

The plaintiffs' Motion for an Emergency Preliminary Injunction (Dkt. No. 124) is granted in part. The Authority defendants' Motion for Leave to File Combined Expanded Opposition to Plaintiffs' Motion for a Preliminary Injunction (Dkt. No. 128) is granted for the reasons stated in the motion.

So ordered on March 31, 2023.

*[signature]*
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE